# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTH CAROLINA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:23CV302 |
| JOSHUA STEIN, in his official capacity as Attorney General of the State of North Carolina, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff American Civil Liberties Union of North Carolina ("ACLU-NC") brings this action for declaratory and injunctive relief against Defendants Joshua Stein, Satana Deberry, Avery Crump, and Lorrin Freeman, in the official capacities of their respective offices,[1] challenging the constitutionality of N.C. Gen. Stat. § 14-288.2 (the "Anti-Riot Act" or the "Act"). (ECF No. 1.) Before the Court are Defendant Stein's Motion to Dismiss, (ECF No. 32), and the Motion to Dismiss filed by Defendants Deberry, Crump, and Freeman, (ECF No. 34). Also before the Court are Plaintiff's Amended Motion to Certify Class, (ECF No. 27), and Plaintiff's Amended Motion for Preliminary Injunction, (ECF No. 30). For the reasons

---

[1] Specifically, this suit was initiated against Defendant Joshua Stein, in his official capacity as Attorney General of the State of North Carolina; Santana Deberry, in her official capacity as District Attorney of the 16th prosecutorial district; Avery Crump, in her official capacity as District Attorney of the 24th prosecutorial district; and Lorrin Freeman, in her official capacity as District Attorney of the 10th prosecutorial district. (ECF No. 1. ¶¶ 35–38.) Plaintiff seeks to bring the suit against Defendants Deberry, Crump, and Freeman as representatives of a class of all elected district attorneys in the State of North Carolina. (*See id.* ¶¶ 39–44.)

stated herein, the Court will grant Defendants' Motions to Dismiss on each of Plaintiff's claims and deny as moot Plaintiff's Amended Motion to Certify Class and Plaintiff's Amended Motion for Preliminary Injunction.

## I.    BACKGROUND

According to Plaintiff's Amended Complaint,[2] Plaintiff ACLU-NC is a statewide, 501(c)(4) nonprofit, nonpartisan organization affiliate of the ACLU, having approximately 21,000 members in North Carolina.  (ECF No. 25 ¶ 12.)  Plaintiff's mission, according to the Amended Complaint, is to defend the civil and constitutional rights of all North Carolinians, "including the free speech, assembly, and petitioning rights guaranteed by the state and federal constitutions, through educational programs, public statements, legislative advocacy, and mass mobilization."  (*Id.*)

The challenged statute in this action, the Anti-Riot Act, was originally enacted in 1969, in the midst of the Civil Rights Movement of the 1960s and student-led demonstrations against the Vietnam War and, according to the Amended Complaint, was enacted "to crack down on protests and demonstrations."  (*Id.* ¶ 43–44.)  The Act makes it a crime to "willfully engage[] in a riot" and to "willfully incite[] another to engage in a riot" when "that inciting results in a riot or is directly and imminently likely to produce a riot."  N.C. Gen. Stat. §§ 14-288.2(b), (d).  "Mere presence alone without an overt act is not sufficient to sustain a conviction."  *Id.* § 14-288.2(g).  Under the Act, a "riot" is defined as a "public disturbance involving an assemblage of three or more persons which by disorderly and violent conduct, or the imminent threat of disorderly and violent conduct, results in injury or damage to persons or property or creates a

---

[2] Plaintiff's Amended Complaint is the operative complaint in this matter.

clear and present danger of injury or damage to persons or property." N.C. Gen. Stat. § 14-288.2(a).

Prior to the initiation of this lawsuit, in March 2023, a bill that amended the Act, House Bill 40 ("H.B. 40"), became law. (*Id.* ¶¶ 2, 71–73.) H.B. 40 added a provision to the Act that further criminalized the offense of "urg[ing]" a riot; however, the provision defining "riot" was left unchanged. (*Id.* ¶¶ 2–3, 46, 63–64.) Plaintiff then, on April 10, 2023, brought this action on behalf of itself and its members challenging the Anti-Riot Act's urging and definitional provisions. (*Id.* ¶¶ 4, 74 (citing ECF No. 1).) Plaintiff also "moved for certification of a statewide defendant class of district attorneys and a preliminary injunction." (*Id.* ¶¶ 4, 74 (citing ECF Nos. 11–14).)

On June 20, 2023, the North Carolina General Assembly inserted language into Senate Bill 626 ("S.B. 626") that altered certain amendments to the Anti-Riot Act that had been enacted in H.B. 40. (*Id.* ¶¶ 5, 75.) One such alteration removed all the provisions of the Act that criminalized urging a riot. (*Id.*) S.B. 626, however, again did not amend the existing definitional provision of the Act. (*Id.*) S.B. 626 became law on June 30, 2023, (*id.* ¶ 76), rendering moot Plaintiff's challenge to the former provisions of the Act concerning urging a riot, that were set forth in Plaintiff's original Complaint, (*id.* ¶ 5).

On July 6, 2023, Plaintiff filed its Amended Complaint, challenging the Anti-Riot Act as "facially unconstitutional" and alleging that the Anti-Riot Act's definition of "riot" is "vague and overbroad in violation of the First and Fourteenth Amendments to the United States Constitution and article I, sections 12, 14, and 19 of the North Carolina Constitution." (*Id.* ¶¶ 1, 7.) Plaintiff's Amended Complaint sets forth five claims for relief: (1) violation of due process under the Fourteenth Amendment to the U.S. Constitution on vagueness grounds; (2)

3

violation of free speech, assembly, and petitioning rights under the First and Fourteenth Amendments of the U.S. Constitution on overbreadth grounds; (3) violation of due process under article I, section 19 of the North Carolina Constitution on vagueness grounds; (4) violation of free speech, assembly, and petitioning rights under article I, section 12 of the North Carolina Constitution on overbreadth grounds; and (5) violation of free speech and protest rights under article I, section 14 of the North Carolina Constitution on overbreadth grounds. (*Id.* at 29–39.)

Plaintiff in this action seeks a preliminary and permanent injunction prohibiting enforcement of the Anti-Riot Act; a declaratory judgment that the Challenged Statute violates free speech, assembly, petitioning, and due process rights under the First and Fourteenth Amendments to the United States Constitution and article I, sections 12, 14, and 19 of the North Carolina Constitution; and an award to Plaintiff of reasonable costs and attorneys' fees. (*Id.* at 39–40.) Additionally, Plaintiff filed an Amended Motion to Certify Class, (ECF No. 27), and an Amended Motion for Preliminary Injunction, (ECF No. 30).

On July 20, 2023, Defendant Stein filed a motion to dismiss Plaintiff's Amended Complaint and all of Plaintiff's claims therein pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 32.) Defendants Deberry, Crump, and Freeman filed a motion to dismiss on the same bases. (ECF No. 34.) Because Defendants' Motions to Dismiss collectively implicate the jurisdiction of this Court and may be dispositive, the Court will address these motions first.

## II.   DEFENDANTS' MOTIONS TO DISMISS[3]

Defendants' Motions to Dismiss raise two central arguments.  First, Defendants argue that Plaintiff lacks standing to challenge the Anti-Riot Act.  (ECF No. 33 at 8.)  Second, they argue that Plaintiff's Amended Complaint fails to state any claim for which relief can be granted.  (*See id.* at 15.)  The Court first addresses the issue of whether Plaintiff has standing to bring this lawsuit.  Defendants contend that Plaintiff lacks standing to challenge the Anti-Riot Act because Plaintiff's Amended Complaint does not sufficiently allege an injury-in-fact to Plaintiff or its members.  (*Id.* at 9.)  In response, Plaintiff argues that it has both associational and organizational standing. (ECF No. 40 at 4.)

### A.   Standing

To establish Article III standing, a plaintiff first must demonstrate that the plaintiff has "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'"  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (citation omitted).  The adjective "concrete" in this context, "convey[s] the usual meaning of the term—'real,' and not 'abstract.'"  *Id.* (citation omitted).  "Second, the injury must be fairly traceable to the defendant's actions, rather than the result of independent action of a third party not before the court."  *Singh v. Univ. of N.*

---

[3] In their brief in support of their Motion to Dismiss, Defendants Deberry, Crump, and Freeman, "[i]n the interest of judicial economy and because the arguments are identical . . . adopt and incorporate by reference . . . the entirety of Defendant Stein's Memorandum of Law in Support of Motion to Dismiss." (ECF No. 35 at 2 (citing ECF No. 33).)  Therefore, any arguments from Defendant Stein's brief in support of his Motion to Dismiss, (ECF No. 33), serve to represent the arguments of all Defendants in this case and are treated as such when referenced in this Court's Memorandum Opinion and Order.

*Carolina at Chapel Hill*, 659 F. Supp. 3d 659, 674 (M.D.N.C. 2023) (citing *Lujan*, 504 U.S. at 560). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (quoting *Lujan*, 504 U.S. at 560) (citation and internal quotation marks omitted); *see also Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (citing *Lujan*, 504 U.S. at 560–61); *see also Bethel v. Rogers*, No. 1:20CV330, 2022 WL 4585809, at *3 (M.D.N.C. Sept. 29, 2022).

In determining whether an organization has standing, a court "must conduct the same inquiry as in the case of an individual." *Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982)). An organizational plaintiff may demonstrate standing in one of two ways: (1) on its own behalf (organizational standing); or (2) on behalf of its members (representational or associational standing). *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005); *see also Guilford Coll. v. McAleenan*, 389 F. Supp. 3d 377, 388 (M.D.N.C. 2019). Both the Supreme Court and the Fourth Circuit have acknowledged that an injury is cognizable for purposes of organizational standing when a defendant's actions or practices have impeded or impaired the organization's efforts to carry out its mission and caused the organization to divert resources as a result. *See Lane*, 703 F.3d at 674–75 (citing *Havens*, 455 U.S. at 379). However, the Fourth Circuit has further held that alleging the simple diversion of resources in reaction to legislation is not enough to allege an injury-in-fact under organizational standing. *Id.* (holding that a gun rights organization's "mere expense" of utilizing resources to respond to inquiries into the operation and consequences of interstate handgun transfer provisions did not constitute an injury-in-fact). An organization has associational standing to bring suit on behalf of its members (1) "when at least one of its identified members would otherwise have standing to sue in their own right," (2) "the interests

at stake are germane to the organization's purpose," and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, 983 F.3d 671, 683 (4th Cir. 2020) (internal quotation marks omitted) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

1.    Plaintiff Has Failed to Establish Standing on Its Own Behalf

As earlier stated, Plaintiff alleges in its Amended Complaint that its mission is to defend the civil and constitutional rights of all North Carolinians, "including the free speech, assembly, and petitioning rights guaranteed by the state and federal constitutions, through educational programs, public statements, legislative advocacy, and mass mobilization." (ECF No. 25 ¶ 12.) Plaintiff alleges that, in furtherance of that mission, its members and employees "regularly encourage, organize, and participate in public protests and demonstrations throughout North Carolina, including within this District," and that it "regularly expends organizational resources in the form of staff time, funding, and purchased materials" to support public protests and demonstrations throughout the state. (*Id.* ¶¶ 13, 22.) Further, Plaintiff states that the ability of Plaintiff's employees and members "to encourage, organize, and participate in public protests is crucial to furthering Plaintiff's organizational mission," and that the challenged provisions of the Anti-Riot Act "impede Plaintiff's ability to engage in these activities." (*Id.* ¶ 25.) According to Plaintiff, its ability to engage in these activities is inhibited because it "has expended and will continue to expend resources to address the potential liability of itself, its employees, and its members" under the Anti-Riot Act; its "employees have been and will be required to respond to inquiries" from members and the larger community about their potential liability under the Act, (*id.* ¶ 26); and the time and effort

7

Plaintiff's employees "have expended and will continue to expend" to address their potential liability under the Act "directly reduces its capacity to plan events and programming consistent with its organizational mission," (*id.* ¶ 28).

The Fourth Circuit has made clear that alleging the diversion of resources in response to legislation alone does not suffice to allege a cognizable injury under organizational standing. *Lane*, 703 F.3d at 675. In *Lane*, the Fourth Circuit reasoned that

> [t]o determine that an organization that decides to spend its money on educating members, responding to member inquiries or undertaking litigation in response to legislation suffers a cognizable injury would be to imply standing for organizations with merely "abstract concern[s] with a subject that could be affected by an adjudication."

*Id.* (second alteration in original) (citations omitted) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976)). In addition, the Fourth Circuit in *Lane* states that when a plaintiff "is not the direct subject of government action, but rather when the asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, satisfying standing requirements will be substantially more difficult." *Id.* at 673 (citation and internal quotation marks omitted) (quoting *Frank Krasner Enters. v. Montgomery Cnty.*, 401 F.3d 230, 234–35 (4th Cir. 2005)).[4]

Here, as was true when the Fourth Circuit concluded there was no injury-in-fact alleged in *Lane*, "[a]lthough a diversion of resources might harm the organization by reducing the funds available for other purposes, it results not from any actions taken by [Defendants], but rather from the [organization's] own budgetary choices." *Id.* (second alteration in original)

---

[4] The Court recognizes that, in *Lane*, this statement was made in the context of individual standing, not organizational standing. *See Lane v. Holder*, 703 F.3d 668, 673 (4th Cir. 2012). However, the Court reiterates that *Lane* also explains that "[i]n determining whether an organization has standing, we must conduct the same inquiry as in the case of an individual." *Id.* at 674 (citing *Havens*, 455 U.S. at 378); *see* discussion *supra* section A.

(citations and internal quotation marks omitted). Plaintiff consciously made its own choice to commit resources to "address[ing] the potential liability of itself, its employees, and its members under the Anti-Riot Act" and "to respond to inquiries from . . . members and the broader community regarding their potential liability" under the Act. (ECF No. 25 ¶ 26.) The existence of the Anti-Riot Act does not directly obstruct Plaintiff's organizational purpose, and therefore Plaintiff's claim does not involve "a distinct and palpable injury to a legally protected interest" of Plaintiff on its own behalf. *Lane*, 703 F.3d at 671–72 (citation and internal quotation marks omitted). Thus, Plaintiff's voluntary choice to redirect its resources to respond to inquiries in reaction to the Anti-Riot Act is not sufficient to allege an injury-in-fact on its own behalf; consequently, Plaintiff has failed to sufficiently allege organizational standing on its own behalf.

2.    Plaintiff Has Demonstrated Representational Standing

Defendants do not dispute that Plaintiff satisfies the latter two elements of associational standing, i.e., that "the interests at stake are germane to the organization's purpose," and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Outdoor Amusement*, 983 F.3d at 683 (internal quotation marks omitted) (quoting *Friends of the Earth*, 528 U.S. at 181). Moreover, the Court finds that Plaintiff adequately alleges that the interests at stake in this lawsuit are germane to Plaintiff's purpose, as Plaintiff is a membership-based organization devoted to the preservation of constitutional rights, its members and employees regularly organize and participate in public protests on civil rights issues, (ECF No. 25 ¶¶ 12–21), and the right to protest in public is central to Plaintiff's civil rights advocacy mission, (*see id.* ¶¶ 21, 23–25). Further, the individual participation of Plaintiff's members is not required for this litigation. Plaintiff seeks to enjoin

the statute, which would benefit many of its members, and does not seek damages or other individualized forms of relief. *See Outdoor Amusement*, 983 F.3d at 683 (where an organization sought injunction that would benefit many of its members, individual participation was unnecessary).

Defendants do contest, however, that Plaintiff satisfies the first element of associational standing: that at least one of its individual members has standing in their own right. (ECF No. 33 at 8–9.) More specifically, Defendants argue that Plaintiff has failed to allege the three elements that Plaintiff must plausibly allege to establish that one of its members has standing, (*see id.* at 9, 15)—that (1) one of its members has suffered an injury-in-fact, (2) the injury is fairly traceable to the defendant's actions, and (3) a favorable decision from the Court would redress the injury, *see Friends of the Earth*, 528 U.S. at 180–81. The Court begins by determining whether Plaintiff sufficiently alleged an injury-in-fact to Plaintiff's members.

As Plaintiff also brings a pre-enforcement challenge to the Anti-Riot Act on behalf of its members, "[t]here are two ways that [a plaintiff's] allegations . . . can satisfy the injury-in-fact requirement for prospective relief." *Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018). First, a plaintiff satisfies the injury-in-fact requirement where that plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). "Separately, there is an ongoing injury in fact if plaintiffs make a 'sufficient showing of self-censorship, which occurs when a claimant is chilled from exercising his right to free expression.'" *Kenny*, 885 F.3d at 288 (quoting *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013)). Thus, the Court must consider whether at least

one of Plaintiff's members would satisfy the injury-in-fact requirement under either of these approaches.

          a.    Plaintiff Has Failed to Show Injury-in-Fact under the *Babbitt* Approach

To begin, despite Plaintiff's allegations of its members' regular participation in protests and demonstrations, their intent to engage in similar activities in the future, and the past arrest of individuals under the Act, (ECF No. 25 ¶¶ 18–20, 78), Plaintiff does not specifically allege an intent to engage in conduct that would inevitably violate the Anti-Riot Act. *See Kenny*, 885 F.3d at 291 (concluding that the plaintiffs' allegation that behavior perceived to violate the statutes was "inevitable" on school grounds was sufficient to allege an intent to engage in a specific course of conduct proscribed by the statutes) (citing *Babbitt*, 442 U.S. at 301 (finding that a plaintiff's allegation that it intended to engage in conduct that would "inevitabl[y]" violate the challenged statute was enough to allege an intent to engage in a specific course of conduct)).[5] Thus, the Court concludes that Plaintiff has failed to allege that its members have an intention to engage in a course of conduct arguably affected with a constitutional interest and proscribed by statute.

---

[5] The Court notes that, though the defendants in *Kenny* argued that the plaintiffs lacked standing because they "fail[ed] to allege an intent to engage in a specific course of conduct proscribed by the statutes," the Fourth Circuit explained that "it [was] precisely because the statutes [were] so vague that plaintiffs [couldn't] be more specific" and that the plaintiffs alleged that they couldn't "predict the type of conduct that [would] lead to an arrest." *Kenny v. Wilson*, 885 F.3d 280, 291 (4th Cir. 2018). The same arguments are made in this case, as Defendants argue that Plaintiff did not adequately allege an intention to engage in specific conduct arguably proscribed by the statute, (ECF No. 33 at 10), and Plaintiff argues that it can't be more specific because the definitional provision of the Act is so vague, (ECF No. 40 at 9–10). However, in *Kenny*, the Fourth Circuit went on to conclude that the plaintiffs successfully alleged an intent to engage in a specific course of conduct proscribed by the statutes. 885 F.3d at 291. This Court points out that the Fourth Circuit reached this conclusion because the plaintiffs alleged that the intended conduct would inevitably violate the statutes. *Id.* Here, as distinguished from the plaintiffs in *Kenny*, Plaintiff does not allege an intent to engage in conduct that would inevitably violate the Anti-Riot Act. Thus, Plaintiff's argument that the alleged vagueness of the Act's definitional provision did not allow its allegations to be more specific, even if true, is of no effect.

Even if Plaintiff were to have adequately alleged an intent to engage in conduct that would inevitably violate the Act, *Babbitt* also requires that a "credible threat of prosecution" exist. *Babbitt*, 442 U.S. at 298. "[T]here is a credible threat of future enforcement so long as the threat is not imaginary or wholly speculative, chimerical, or wholly conjectural." *Kenny*, 885 F.3d at 288 (citations and internal quotation marks omitted). "[P]ast enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical," and "[t]hreat of prosecution is especially credible when defendants have not 'disavowed enforcement' if plaintiffs engage in similar conduct in the future." *Id.* (first alteration in original) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164, 165 (2014)). Moreover, there exists a presumption that a "non-moribund statute that facially restrict[s] expressive activity by the class to which the plaintiff belongs presents such a credible threat, and a case or controversy thus exists in the absence of compelling evidence to the contrary." *N. Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999) (alteration in original) (citation and internal quotation marks omitted). "This presumption is particularly appropriate when the presence of a statute tends to chill the exercise of First Amendment rights." *Id.* (citation omitted).

Certain United States Supreme Court cases provide a comprehensive set of circumstances under which a plaintiff has shown a credible threat of prosecution. As the Fourth Circuit recognized in *Maryland Shall Issue, Inc. v. Hogan*, the Supreme Court has outlined a litany of decisions in which it concluded that Article III standing was satisfied in pre-enforcement challenges:

> In *Susan B. Anthony List*, the Supreme Court identified four decisions—*Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), *Babbitt*, 442 U.S. at 298, 99 S.Ct. 2301, [*Virginia v.*] *American Booksellers Association*[*, Inc.*], 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 [(1988)], and *Holder* [*v. Humanitarian L.*

*Project*], 561 U.S. . . . 1, 130 S.Ct. 2705 [(2010)]—that illustrate "circumstances under which plaintiffs may bring a preenforcement challenge consistent with Article III." 573 U.S. at 159, 134 S.Ct. 2334. In the earliest example, *Steffel*, in which "police officers threatened to arrest petitioner and his companion for distributing handbills protesting the Vietnam War," the Supreme Court found a credible threat of enforcement. *Id.* at 159, 134 S.Ct. 2334. Because the petitioner "had been warned to stop handbilling and threatened with prosecution if he disobeyed [and] his companion's prosecution showed that his 'concern with arrest' was not 'chimerical,'" the Court allowed a preenforcement challenge to proceed. *Id.* Later, in *Babbitt*, the Supreme Court held that the petitioners had standing to bring a preenforcement challenge because they had "actively engaged in" the proscribed conduct in the past, alleged an intention to continue that conduct in the future, and showed that this plan made prosecution "inevitable." *Id.* at 160, 134 S.Ct. 2334.

Likewise, the Supreme Court recognized a preenforcement challenge was permissible in *American Booksellers Association* because the booksellers had already published books that were covered by the challenged statute and alleged that "costly compliance measures would be necessary to avoid prosecution for displaying such books." *Id.* Lastly, the Supreme Court found a credible threat of prosecution in *Holder* where plaintiffs challenged a law that criminalized knowingly providing material support or resources to a foreign terrorist organization. *Id.* at 160–61, 134 S.Ct. 2334. There, "[t]he plaintiffs ... had provided support to groups designated as terrorist organizations prior to the law's enactment and would provide similar support in the future. The Government had charged 150 persons with violating the law and declined to disavow prosecution if the plaintiffs resumed their support of the designated organizations." *Id.* at 161, 134 S.Ct. 2334.

971 F.3d 199, 217–18 (4th Cir. 2020) (alterations in original). In *Hogan*, because (1) the State of Maryland had not threatened prosecution for the "supposedly proscribed conduct," as was true in *Steffel* and *Holder*; (2) the plaintiffs "offered no evidence of the law having been enforced as they fear," which was evidence present in *Steffel* and *Holder*; and (3) the plaintiffs failed to allege "any concrete intention to (arguably) violate" the challenged law, the plaintiffs failed to establish a credible threat of prosecution. *Id.* at 218.

Here, for reasons similar to those articulated in *Hogan*, the Court finds that Plaintiff has failed to allege that its members face a credible threat of prosecution. In its Amended Complaint, there is no allegation that any official or entity of the State of North Carolina has

13

threatened prosecution against Plaintiff's members for the allegedly proscribed conduct or declined to disavow prosecution against Plaintiff's members for the allegedly proscribed conduct.[6] Further, the existing presumption does not apply. Although Plaintiff arguably alleges that "the presence of [the Act] tends to chill the exercise of First Amendment rights," *Bartlett*, 168 F.3d 705, 710—which this Court will later address—there are no allegations in Plaintiff's Amended Complaint that the Anti-Riot Act has been enforced as Plaintiff fears. While Plaintiff alleges that "[i]ndividuals engaged in lawful protest activities, including demonstrations against racial injustice and police brutality, have been arrested and charged under the Anti-Riot Act in North Carolina in recent years," (ECF No. 25 ¶ 78), and that its members participate in peaceful protests and demonstrations, (*id.* ¶¶ 14, 27, 29), Plaintiff fails to sufficiently allege that persons who have participated in nonviolent protest in close proximity to an act of violence or property damage committed by others have been arrested and prosecuted under the Act. Thus, Plaintiff fails to allege that a "non-moribund statute . . . facially restrict[s] expressive activity *by the class to which the plaintiff belongs*," as is required for the presumption of a credible threat to apply. *Bartlett*, 168 F.3d at 710 (emphasis added); *see Kenny*, 885 F.3d at 289 (where, in concluding that "the presumption of a credible threat applie[d]," the Fourth Circuit considered that the statutes at issue were "regularly enforced against

---

[6] The Court recognizes that, under very specific circumstances, the Fourth Circuit has not required that the prosecution of a plaintiff be explicitly threatened in order for the plaintiff to show the existence of a credible threat of arrest. *See N. Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 709, 710 (4th Cir. 1999) (holding a plaintiff's fear of prosecution was reasonable in its pre-enforcement challenge to a North Carolina statute even where, after the plaintiff wrote to the State Board of Elections in order "[t]o determine whether that fear was well founded," the State Board "did not indicate that it would interpret the statute to mean anything other than what its plain language would suggest"). Here, however, as distinguished from *Bartlett*, Plaintiff did not submit an inquiry to Defendants concerning potential liability of peaceful protestors under the statute. Therefore, no response was given from Defendants from which the Court could find that a credible threat of prosecution exists, as such a response from the State Board did in *Bartlett*.

14

students like" the pertinent plaintiffs).  And lastly, as has already been acknowledged by the Court, Plaintiff does not allege any concrete intention to violate the Act by committing the allegedly proscribed conduct.  Therefore, the Court concludes that Plaintiff, on behalf of its members, has not sufficiently alleged that its members face a credible threat of prosecution under the Anti-Riot Act.

Accordingly, as Plaintiff fails to allege (1) that its members have an intention to engage in a course of conduct arguably affected with a constitutional interest and proscribed by statute *and* (2) that its members face a credible threat of prosecution, Plaintiff has not satisfied the injury-in-fact requirement under *Babbitt*.

        b.      Plaintiff Has Demonstrated Injury-in-Fact through Self-Censorship and the Chilling of the Right to Free Expression

The Court next considers whether Plaintiff has satisfied the injury-in-fact requirement of standing in a pre-enforcement challenge via the second avenue at Plaintiff's disposal: making a "sufficient showing of self-censorship" by alleging that at least one of Plaintiff's members has been "chilled from exercising [their] right to free expression." *Cooksey*, 721 F.3d at 235.  "Although '[s]ubjective or speculative accounts of such a chilling effect are not sufficient . . . a claimant need not show he ceased those activities altogether to demonstrate an injury in fact.'" *Kenny*, 885 F.3d at 289 n.3 (alterations in original) (quoting *Cooksey*, 721 F.3d at 236).  "Instead, '[g]overnment action will be sufficiently chilling when it is likely to deter a person of ordinary firmness from the exercise of First Amendment rights.'" *Id.* (alterations in original) (quoting *Cooksey*, 721 F.3d at 236).  If such a likelihood is present, the chilling effect can then be considered "objectively reasonable." *Cooksey*, 721 F.3d at 236; *see Edgar v. Coats*, 454 F. Supp. 3d 502, 525 (D. Md. 2020).

Here, Plaintiff alleges that, as a result of the vagueness and overbreadth of the Anti-Riot Act, "its members fear that as they continue exercising their free speech, assembly, and petitioning rights by engaging in public protests and demonstrations, they risk prosecution and arrest under the Act." (ECF No. 25 ¶ 32.) Plaintiff also alleges that its members "have already been and will continue to be discouraged from participating in demonstrations for fear that the intent and actions of others may subject them to arbitrary enforcement and severe criminal penalties under the Act, due to the overbroad and vague definition of a riot in the definitional provision." (*Id.* ¶ 87.)

The Act's effect, as alleged by Plaintiff, on Plaintiff's members, is similar to the type of effect alleged by plaintiffs in other Fourth Circuit cases that has been recognized as a chill on free speech and expression. *See Edgar v. Haines*, 2 F.4th 298, 310 (4th Cir. 2021) (finding speech chilled and self-censorship where the plaintiffs alleged that they have decided not to write about certain topics due to the "vagueness and breadth" of the defendants' prepublication review regimes); *Cooksey*, 721 F.3d at 236 (noting that but for the government's regulation, the plaintiff would not have had "a speech-chilling uncertainty about the legality of private conversations and correspondence" and would have resumed his advice column); *Menders v. Loudoun Cnty. Sch. Bd.*, 65 F.4th 157, 165 (4th Cir. 2023) (finding objectively reasonable chilling effect on speech where parents alleged that their children refrained from speaking on political or social issues because they feared being reported by fellow students and resulting investigation of these reports by the public school system). The Court finds Plaintiff's allegations sufficient to show that the Anti-Riot Act has produced a non-speculative and objectively reasonable chilling effect on Plaintiffs' members speech. Therefore, Plaintiff's allegations are sufficient to satisfy the injury-in-fact requirement of standing.

16

c. Plaintiff Has Demonstrated Traceability and Redressability

Having found that Plaintiff's members have suffered an injury-in-fact, the Court must next determine whether Plaintiff's allegations are sufficient to show that Plaintiff's members satisfy the remaining elements of standing: causation and redressability. Causation exists where there is a "causal connection between the injury and the conduct complained of that is 'fairly traceable,' and not 'the result of the independent action of some third party not before the court.'" *Krasner*, 401 F.3d at 234 (quoting *Lujan*, 504 U.S. at 560). The redressability requirement is met where there is "a non-speculative likelihood that the injury would be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560–61). Plaintiff alleges that the chilling of its members' free speech is "due to the overbroad and vague definition of a riot in the definitional provision" of the Act, (ECF No. 25 ¶¶ 32, 87), and alleges that Defendants are responsible for the prosecution of the Act, (*id.* ¶¶ 33–36).[7] Further, a decision from this Court in favor of Plaintiff would deem the Anti-Riot Act unconstitutional and enjoin Defendants from enforcing the Act. The Court finds that Plaintiff's allegations demonstrate that Plaintiff's members sufficiently allege the elements of causation and redressability.

Therefore, the Court concludes that Plaintiff has successfully alleged associational standing on behalf of its members.

---

[7] Specifically, Plaintiff alleges that Defendant Stein is responsible for "defend[ing] the interests of the State in all criminal and civil matters" and for "deploying and supervising special prosecutors to assist elected district attorneys in the prosecution of any criminal matter upon a district attorney's request." (ECF No. 25 ¶ 33.) With respect to Defendants Deberry, Crump, and Freeman, Plaintiff alleges that each is an elected District Attorney that is, in their respective prosecutorial districts, "responsible for prosecuting misdemeanor and felony violations of North Carolina's criminal laws that occur within [that individual's] district, including violations of the Anti-Riot Act." (*Id.* ¶¶ 33–36.)

17

### B. Failure to State a Claim

Defendants assert that Plaintiff has failed to state a claim as to each of the five claims alleged in the Amended Complaint and failed to allege sufficient facts to establish that the Act is unconstitutional. (ECF No. 33 at 3, 15.) Also, Defendants argue that state sovereign immunity under the Eleventh Amendment precludes Plaintiff's state constitutional claims. (*Id.* at 16 n.3.) Plaintiff, on the other hand, argues that it sufficiently alleges in its Amended Complaint that the Act's definition of riot is unconstitutionally vague and overbroad and contends that its state constitutional claims remain live. (ECF No. 40 at 21 & n.7.)

#### 1. Eleventh Amendment Sovereign Immunity

The Court first addresses whether Defendants have sovereign immunity against Plaintiff's state constitutional claims. Citing a magistrate judge's decision in *Guseh v. N. Carolina Cent. Univ.*, 423 F. Supp. 2d 550, 561 (M.D.N.C. 2005), Defendants argue that the Eleventh Amendment precludes Plaintiff from asserting state constitutional claims against state officials sued in their official capacity in federal court. (ECF No. 33 at 16 n.3.) Plaintiff argues that its state constitutional claims survive because the decision of the North Carolina Supreme Court in *Corum v. Univ. of N. Carolina*, 413 S.E.2d 276 (N.C. 1992), waived Eleventh Amendment sovereign immunity for such claims, and that further, in the district judge's decision in *Guseh*, the district judge rejected the portion of the magistrate judge's order that Defendants cite in support of their argument. (ECF No. 40 at 21 n.7.) The Court agrees with Plaintiff.

The district judge in *Guseh* correctly observed that in *Corum*, "the Supreme Court of North Carolina has held that sovereign immunity may not bar direct North Carolina constitutional claims against the State and its agents." *Guseh v. N. Carolina Cent. Univ.*, No. 1:04CV00042, 2006 WL 694621, at *1 n.1 (M.D.N.C. Mar. 13, 2006) (citing *Corum*, 413 S.E.2d at 276, 289, & 291). Further, the district judge in *Guseh* explicitly stated that it did "not adopt

18

the Magistrate Judge's Recommendation" barring the plaintiff's state constitutional claim on the basis of sovereign immunity. *Id.* The Fourth Circuit later affirmed the decision of the district court. *See Guseh v. N. Carolina Cent. Univ. ex rel. Bd. of Governors of Univ. of N. Carolina*, 206 F. App'x 255 at *1 (4th Cir. 2006) (unpublished). Thus, consistent with the North Carolina Supreme Court decision in *Corum*, this Court concludes that Plaintiff's state constitutional claims against Defendants are not barred by sovereign immunity and remain live.

2. <u>Plaintiff Has Failed to State a Claim That the Anti-Riot Act is Overly Broad</u>

Plaintiff brings a facial challenge to the Anti-Riot Act on grounds of overbreadth. (ECF No. 25 ¶¶ 1, 93.) In light of the traditional disfavoring of facial challenges,[8] "a facial challenge typically requires a showing [either] that 'no set of circumstances exists under which the Act would be valid, *i.e.*, that the law is unconstitutional in all of its applications,'" *United States v. Miselis*, 972 F.3d 518, 530 (4th Cir. 2020) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)), or "that the statute lacks any plainly legitimate sweep," *id.* (internal quotation marks omitted) (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)). The Fourth Circuit cautions that, when evaluating whether a statute satisfies one of these heightened requirements, "courts must . . . take care 'not to . . . speculate about

---

[8] The Fourth Circuit has acknowledged certain concerns about claims concerning the facial invalidity of statutes. *United States v. Miselis*, 972 F.3d 518, 530 (4th Cir. 2020) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)). According to the Fourth Circuit,

> facial challenges "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law that is broader than is required by the precise facts to which it is to be applied."

*Id.* (quoting *Wash. State Grange*, 552 U.S. at 450). Moreover, the Fourth Circuit explained that "facial challenges 'threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution.'" *Id.* (quoting *Wash. State Grange*, 552 U.S. at 451).

19

hypothetical or imaginary cases.'" *Id.* (quoting *Wash. State Grange*, 552 U.S. at 450) (second alteration in original). However, in the context of the First Amendment, the fear of chilling protected expression "has led courts to entertain facial challenges based merely on hypothetical applications of the law to nonparties." *Preston v. Leake*, 660 F.3d 726, 738 (4th Cir. 2011). Facial challenges on the grounds of overbreadth fall into this category of facial challenges for which courts will apply a different standard. *See Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003) ("The First Amendment doctrine of overbreadth is an exception to our normal rule regarding the standards for facial challenges. The showing that a law punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep,' suffices to invalidate all enforcement of that law, 'until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.'" (citations omitted)).

Generally, a statute is facially overbroad only if a provision of the statute, properly construed, "criminalizes a substantial amount of protected *expressive* activity" and that provision cannot be severed from the statute's legitimate portions. *United States v. Williams*, 553 U.S. 285, 297 (2008) (emphasis added). In this First Amendment context, however, "a statute 'may be invalidated as overbroad' as long as 'a *substantial* number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Miselis*, 972 F.3d at 530 (quoting *Stevens*, 559 U.S. at 473) (emphasis added). The Supreme Court has "vigorously enforced the requirement that [the] statute's overbreadth be *substantial* . . . relative to the statute's plainly legitimate sweep," *Williams*, 553 U.S. at 292—"it isn't enough to render a statute susceptible to a facial attack that one may simply 'conceive of some impermissible

20

applications.'" *Miselis*, 972 F.3d at 531 (quoting *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984)).

To the extent that Plaintiff seeks to invalidate the Anti-Riot Act as overbroad based on any rights other than free speech rights, the overbreadth doctrine is not the appropriate means to raise such a challenge. *United States v. Salerno*, 481 U.S. 739, 745 (1987) (finding that the overbreadth doctrine is "not recognized . . . outside the limited context of the First Amendment") (citing *Schall v. Martin*, 467 U.S. 253, 268 n.18 (1984) ("[O]utside the limited First Amendment context, a criminal statute may not be attacked as overbroad.")). Therefore, in considering whether Plaintiff has stated a claim that the Anti-Riot Act is constitutionally overbroad, the Court will limit its analysis to the Anti-Riot Act's alleged interference with Plaintiff's members' rights to free speech and expression.

To support its argument that "[t]he definitional provision of the Anti-Riot Act . . . is overbroad in violation of the First and Fourteenth Amendments," Plaintiff alleges that, under the Act's definition of "riot," "an individual who encourages, organizes, or participates in a protest, but who does not personally incite, engage in, threaten, or aid and abet violence or property damage, may be held liable under the Act if they are in proximity to an act of violence or property destruction," (ECF No. 25 ¶¶ 93–94.) As a result, according to Plaintiff, the definition "directly and substantially targets protestors' constitutionally protected speech and expressive conduct, impermissibly criminalizing non-violent protest activity." (*Id.* ¶ 94.)

The Fourth Circuit has delineated the steps that courts are to take in an overbreadth analysis. *See Miselis*, 972 F.3d at 531. First, the Court must "construe the challenged statute." *Id.* (internal quotation marks omitted) (quoting *Williams*, 553 U.S. at 293). In the Court's construction, the Court must ascertain "whether the statute is -

subject to a limiting construction." *Id.* (internal quotation marks and alteration omitted) (quoting *New York v. Ferber*, 458 U.S. 747, 769 n.24 (1982)). Then, the Court "must . . . determine whether, so construed, the statute 'criminalizes a substantial amount of protected expressive activity.'" *Id.* (quoting *Williams*, 553 U.S. at 297). "Finally, if the statute proves 'impermissibly overbroad,' we must assess whether 'the unconstitutional portion' is 'severable' from the remainder; if so, only that portion 'is to be invalidated.'" *Id.* (quoting *Ferber*, 458 U.S. at 769 n.24).

Defendants argue that, as confirmed by *State v. Brooks*, 215 S.E.2d 111 (N.C. 1975), the definition of riot under the Act is not overbroad because engaging in a riot under the Act requires that an individual be "one of three or more people *violently* creating an annoying, disturbing, or alarming condition." (ECF No. 33 at 18 (internal quotation marks omitted).) Defendants contend that North Carolina state court decisions support that the definitional provision of the Act can be construed to avoid constitutional concerns. (*Id.* at 19–20.) In support of its argument that the definitional provision is indeed unconstitutionally overbroad, Plaintiff posits that *State v. Brooks* does not prevent the Act's application to protected speech, causing it to be irreconcilable with *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982). (ECF No. 40 at 22–23.) In *Claiborne*, the United States Supreme Court held that the First Amendment prohibits peaceful protestors from being held liable for fellow protestors' violence. (*Id.* at 15, 23–24 (citing *Claiborne*, 458 U.S. at 918–20).) Further, Plaintiff asserts that the protected activity covered by the Act's definitional provision is substantial. (*Id.* at 24.)

Before conducting the overbreadth analysis, the Court begins by clarifying the scope of the unprotected speech that the Anti-Riot Act seeks to regulate. *See Miselis*, 972 F.3d at 532 (citation omitted) (demonstrating how the Fourth Circuit, before conducting its overbreadth

22

analysis of a challenged federal anti-riot statute, began "by delineating the scope of unprotected speech that the statute aim[ed] to regulate"). Two North Carolina cases *State v. Brooks* and *State v. Mitchell*, 429 S.E.2d 580 (N.C. Ct. App. 1993), provide guidance as to the scope of the Anti-Riot Act.

a.     The Scope of Unprotected Speech the Anti-Riot Act Seeks to Regulate

In *State v. Brooks*, the North Carolina Supreme Court explained that "[t]he advocacy of imminent lawless action is not protected by the First Amendment," and plainly stated that, as a result, this "is the only type of speech that can come within the purview of [N.C. Gen. Stat.] § 14-288.2." 215 S.E.2d at 118 (citing *Brandenburg v. Ohio*, 395 U.S. 444 (1969) (per curiam)). In addition, the scope of unprotected speech that the Act seeks to regulate in criminalizing any person who "willfully engages in a riot,"[9] *see* N.C. Gen. Stat. §§ 14-288.4(b)–(c2), was further defined in *State v. Mitchell*.

In *Mitchell*, a defendant was convicted of engaging in a riot under the Anti-Riot Act. 429 S.E.2d at 580. A crowd had congregated in a parking lot near the entrance of a public facility for a party, and two police officers arrived in order to disperse the crowd, informing the individuals outside to either leave the parking lot or to go inside. *Id.* at 580–81. When one of the officers encountered the defendant, he instructed the defendant to do the same; in response, the defendant cursed at the officer. *Id.* at 581. The officer told the defendant that he was under arrest and placed his hand on the defendant, and the defendant swung his arm

---

[9] The Court recognizes that the Act also criminalizes any person who "willfully incites another to engage in a riot." N.C. Gen. Stat. §§ 14-288.4(d)–(e1). However, because Plaintiff's specific concern in its overbreadth challenge is "whether a defendant must have personally engaged in violent or disorderly conduct" to be held liable under the Act, (ECF No. 40 at 27), the provisions addressing any person who "willfully engages in a riot" are the pertinent provisions in this case.

back, hitting the officer, and pulled away from the officer. *Id.* The defendant was then put into handcuffs. *Id.*

Activity then transpired that "was sufficient to show that disorderly and violent conduct took place and that the conduct resulted in injury or damage to persons or property," and, therefore, "to show that a riot occurred." *Id.* at 582. The crowd that was present began throwing cans and coins, yelling threats to the officers, and kicking and hitting the glass doors to the entrance of the facility. *Id.* at 581. After one of the officers jumped on a table to calm the crowd down, the defendant charged the table and knocked it down, which simultaneously knocked the two officers down. *Id.* The crowd then rushed the officers when they fell to the ground, resulting in injury to the officers and damage to the facility. *Id.* at 581, 582.

Upon the defendant's appeal of his conviction, the North Carolina Court of Appeals considered whether the defendant "willfully engaged in" the riot that took place under the Anti-Riot Act. *Id.* at 582. In upholding the conviction of the defendant, the court concluded that "in using the phrase, 'willfully engaged in,' . . . the legislature contemplated *active participation by the defendant in the riotous activity*." *Id.* (emphasis added). The court found it significant that "when the riotous activity began [the] defendant ran into the table upon which [the officer] was standing." *Id.*

In analyzing the North Carolina Court of Appeals' use of "riotous activity" language in *Mitchell,* the court was referring to the disorderly and violent conduct that took place that resulted in injury to the officers and damages to facility, and was not referring to the assemblage of people, a number of whom took part in such disorderly and violent conduct. *See id.* It therefore appears that the court upheld the defendant's conviction under the Act based upon what the court found to be the defendant's "active participation" in that "riotous

activity." *Id.* Thus, according to *Mitchell*, a defendant is found liable for willfully engaging in a riot only when the defendant *actively participates* in the *riotous activity* that takes place at an assemblage.

With the North Carolina Supreme Court and the North Carolina Court of Appeals having provided guidance on the scope of unprotected speech that the statute seeks to regulate, this Court next turns to whether "the statute overshoots its target and purports to regulate a substantial amount of *protected* speech." *Miselis*, 972 F.3d at 532.

       b.     North Carolina State Courts: Construction of the Anti-Riot Act and Illumination of Legitimate State Interests

Consistent with the Fourth Circuit's guidance on analyzing overbreadth, the Court will next construe the Anti-Riot Act, deferring to existing limiting constructions of the Act and considering the legitimate state interests. The prohibitive and definitional provisions of the Anti-Riot Act direct the reader to the category of unprotected speech that is forbidden. The Act criminalizes any person who "willfully engages in a riot" or who "willfully incites another to engage in a riot." N.C. Gen. Stat. §§ 14-288.2(b)–(e1). The definition of "riot" under the Act reads as follows:

> a public disturbance involving an assemblage of three or more persons which by disorderly and violent conduct, or the imminent threat of disorderly and violent conduct results in injury or damage to persons or property or creates a clear and present danger of injury or damage to persons or property.

N.C. Gen. Stat. § 14-288.2(a). As stated in the statute and recognized in *State v. Brooks*, the definitional provision of the Act

> lists the component elements that constitute the crime of riot. These elements are as follows: (1) Public disturbance; (2) Assemblage; (3) Three or more persons; (4) Disorderly and violent conduct, or the imminent threat of such conduct; and (5) Results in injury or damage to persons or property or creates a clear and present danger of injury or damage to person or property.

215 S.E.2d at 117.

25

Plaintiff argues that North Carolina state court decisions don't provide "a narrowing construction of the definition of riot" or one "that addresses . . . whether an individual may be convicted of rioting for their non-violent participation in an assemblage where others act violently." (ECF No. 40 at 11–12.)  However, as discussed, the Court identifies *State v. Brooks* and *State v. Mitchell* as state court cases that do address the issue of concern for Plaintiff and that allow the Court to conclude that the definitional provision's overbreadth is not "*substantial* . . . relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292.

In *State v. Brooks*, the North Carolina Supreme Court unequivocally held that the Act does not cover "activity protected by the First Amendment," that "the scope of the [A]ct in no way infringes upon the freedom of nonviolent assemblage," and that there is "nothing constitutionally impermissible in our statutory definition of the offense of riot."  215 S.E.2d at 118, 119.  Though *Brooks* does not address the specific issue that is of concern to Plaintiff in this case, such an all-encompassing statement by the highest court in the state about the constitutionality of the definition of riot must be taken into account by this Court.  *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5 (1982) (citation omitted) ("In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered.").  Also, in *Brooks*, the North Carolina Supreme Court explained the legitimate interests the State has in the enactment of the Anti-Riot Act.  After noting that "[t]he advocacy of imminent lawless action is not protected by the First Amendment," 215 S.E.2d at 118 (citing *Brandenburg*, 395 U.S. 444), the state Supreme Court further explained that "[t]he State has a paramount duty to maintain order not only in the streets but in schools, hospitals, and other public places," which is an

obligation that has been recognized by the United States Supreme Court. *Id.* (collecting U.S. Supreme Court cases).

Furthermore, as aforementioned, *State v. Mitchell* makes clear that a defendant is found liable for willfully engaging in a riot only when the defendant *actively participates* in the *riotous activity* that takes place at an assemblage which by disorderly and violent conduct, or the imminent threat of disorderly and violent conduct, results in injury or damage to persons or property or creates a clear and present danger of injury or damage to persons or property. 429 S.E.2d at 582; N.C. Gen. Stat. § 14-288.2(a). Under North Carolina law, North Carolina "statutes which are *in pari materia, i.e.,* which relate or are applicable to the same matter or subject, although enacted at different times must be construed together in order to ascertain legislative intent." *Carver v. Carver*, 314 S.E.2d 739, 742 (N.C. 1984). Thus, because the definitional provision is essentially activated by the remaining provisions of the Anti-Riot Act, the definitional provision must be construed together with the Act's remaining provisions. Other provisions in the Act provide that "[a]ny person who willfully engages in a riot" or "[a]ny person who willfully incites another to engage in a riot" will be prosecuted. *See* N.C. Gen. Stat. §§ 14-288.2(b)–(e1). And, as noted in *Mitchell*, one "willfully engages in a riot" when that person actively participates in the riotous activity that takes place at an assemblage which by disorderly and violent conduct, or the imminent threat of disorderly and violent conduct results in injury or damage to persons or property or creates a clear and present danger of injury or damage to persons or property. 429 S.E.2d at 582; N.C. Gen. Stat. § 14-288.2(a).

Therefore, the Court concludes that a peaceful protestor would not be held liable under the definitional provision if that person was not actively participating in such "disorderly and violent conduct" or the threat of such conduct, which takes place at an assemblage from which

such conduct or threat of conduct results. The specific question for the current case seems to be answered by *Mitchell*.

With the narrowing construction from *Mitchell*, the recognition from the North Carolina Supreme Court in *Brooks* of the legitimate interests of the State, and the clear language from the North Carolina Supreme Court that there is "nothing constitutionally impermissible in [the] statutory definition of the offense of riot," 215 S.E.2d at 118–119, this Court concludes that the Anti-Riot Act does not criminalize a substantial amount of protected expressive activity relative to the Act's plainly legitimate sweep. As a result, the overbreadth concerns Plaintiff alleges are alleviated, and the Court concludes that Plaintiff has failed to adequately allege that the Anti-Riot Act is overbroad under the U.S. Constitution.

c.     Overbreadth under the North Carolina Constitution

The North Carolina Supreme Court has acknowledged that Article I, Section 14 of the North Carolina Constitution offers similar free speech protection as the First Amendment of the U.S. Constitution. *State v. Petersilie*, 432 S.E.2d 832, 840–41 (N.C. 1993). The state Supreme Court, however, does not appear to profess a notable distinction between the standard for overbreadth under the U.S. Constitution and the standard for the doctrine under the North Carolina Constitution. Also, the standard that North Carolina courts articulate when addressing overbreadth challenges under the state constitution does not significantly differ from the standard that federal courts use in overbreadth challenges under the U.S. Constitution.[10]

---

[10] The North Carolina Court of Appeals has stated that "[t]he overbreadth doctrine holds that a law is void on its face if it sweeps within its ambit not solely activity that is subject to governmental control, but also includes within its prohibition the practice of a protected constitutional right." *State v. Hines*, 471 S.E.2d 109, 114 (N.C. Ct. App. 1996) (internal quotation marks omitted) (holding that a state statute was not overbroad because it was "tailored as narrowly as possible to serve North Carolina's compelling interest in ensuring electoral integrity") (quoting *Treants Enterprises, Inc. v. Onslow Cnty.*, 380

28

Moreover, in cases involving claims asserting an overbreadth challenge to a statute under both the U.S. Constitution and the North Carolina Constitution, when the North Carolina Supreme Court has reached an overarching conclusion that a statute is not overbroad, the court has applied that conclusion to overbreadth claims under both constitutions—the U.S. Constitution and the North Carolina Constitution.[11]  *See Hest Techs., Inc. v. State ex rel. Perdue*, 749 S.E.2d 429, 433, 438 (N.C. 2012); *In re Wilkins*, 242 S.E.2d 829, 840–41 (N.C. 1978), *abrogated on other grounds by In re Guess*, 376 S.E.2d 8 (N.C. 1989).  Additionally, aside from generally alleging that article I, sections 12 and 14 of the North Carolina Constitution are "textually broader and . . . provide[] greater protections" than their federal counterparts, (ECF No. 25 ¶¶ 113, 123), Plaintiff offers no argument regarding whether there is a different standard that applies to its overbreadth and vagueness challenges.  (*See generally* ECF No. 40.) As a result, the Court finds that the Anti-Riot Act is likewise not overbroad under the North Carolina Constitution.

Therefore, Plaintiff's Amended Complaint does not sufficiently allege that the Anti-Riot Act's definitional provision is overly broad under the United States Constitution or the North Carolina Constitution.  Because the Court concludes that Plaintiff has not stated a claim

---

S.E.2d 602, 604 (N.C. Ct. App. 1989) (quoting *Clark v. City of Los Angeles*, 650 F.2d 1033, 1039 (9th Cir.1981))).

[11] Although "[i]n construing provisions of the Constitution of North Carolina, [the North Carolina Supreme Court] is not bound by opinions of the Supreme Court of the United States construing even identical provisions in the Constitution of the United States," *State v. Arrington*, 319 S.E.2d 254, 260 (N.C. 1984), the North Carolina Supreme Court has recognized that it "give[s] great weight to decisions of the Supreme Court of the United States interpreting provisions of the Constitution of the United States which are parallel to provisions of the State Constitution to be construed," *State v. Hicks*, 428 S.E.2d 167, 176 (N.C. 1993), *abrogated on other grounds by State v. Buchanan*, 543 S.E.2d 823 (N.C. 2001).  Furthermore, the state Supreme Court has previously, "for the purpose of applying [its] State Constitution's Free Speech Clause . . . adopted the United [States] Supreme Court's First Amendment jurisprudence." *Petersilie*, 432 S.E.2d at 841.

Case 1:23-cv-00302-LCB-JLW   Document 46   Filed 06/26/24   Page 29 of 37

for overbreadth under either the federal or state constitution, the Court dismisses each claim Plaintiff brings challenging the Anti-Riot Act on grounds of overbreadth.[12]

### 3. Plaintiff Has Failed to State a Claim that the Anti-Riot Act is Void For Vagueness

Plaintiff alleges that the other ground upon which its facial challenge to the Act under the U.S. Constitution rests is vagueness. (ECF No. 25 ¶¶ 85–86.) A claim that a statute is void for vagueness can arise under the Due Process Clause of the Fourteenth Amendment. *See Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 781 (4th Cir. 2023); *see Fusaro v. Howard*, 19 F.4th 357, 361 (4th Cir. 2021). As the Court earlier signaled, generally, invalidating a statute as facially void is disfavored. *See Schleifer by Schleifer v. City of Charlottesville*, 159 F.3d 843, 853 (4th Cir. 1998). However, a statute will violate due process on vagueness grounds when it "fails to 'give a person of ordinary intelligence adequate notice of what conduct is prohibited' or lacks 'sufficient standards to prevent arbitrary and discriminatory enforcement.'" *Carolina Youth Action Project*, 60 F.4th at 781 (quoting *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 272 (4th Cir. 2019) (en banc)). The Fourteenth Amendment does not demand "perfect clarity" or "precise guidance," even when a statute "restrict[s] expressive activity." *Williams*, 553 U.S. at 304 (citation and internal quotation marks omitted). Instead, it merely demands "statutory definitions, narrowing context, or settled legal meanings," that ensure a law does not tie criminal culpability to "wholly subjective judgments." *Id.* at 306 (citation omitted). The language of North Carolina courts detailing the vagueness standard in addressing vagueness

---

[12] The claims Plaintiff brings on overbreadth grounds are Count Two, Count Four, and Count Five of Plaintiff's Amended Complaint. (*See* ECF No. 25 at 31–33, 35–39.)

challenges under the North Carolina Constitution is similar to that of federal courts detailing the vagueness standard under the U.S. Constitution.[13]

Defendants argue that the definition of "riot" is not vague because courts at both state and federal levels have rejected vagueness challenges to "statutes with identical or nearly identical definitional provisions." (ECF No. 33 at 20–21.) While relying primarily on *United States v. Miselis*, Defendants assert that the definition of "riot" under the Anti-Riot Act is not vague because anti-riot laws that have a requirement of violence or threat of violence, among other features, are sufficiently narrow to eliminate the risk of subjective enforcement. (*Id.* at 21–22.) Conversely, Plaintiff argues that the Act's definitional provision fails to provide adequate notice to protestors and enables discriminatory enforcement, (ECF No. 40 at 25), and that the Act is silent concerning what intent a defendant must have acted with and "whether a defendant must have personally engaged in violent or disorderly conduct," (*id.* at 27).

The Court first addresses Defendants' reliance on *United States v. Miselis* to validate the Anti-Riot Act's definition of "riot." While the Fourth Circuit held in *Miselis* that the definition of "riot" in a federal anti-riot act was not vague because a requirement of "an act or threat of

---

[13] Similar to vagueness under the U.S. Constitution, a law is void for vagueness under the article I, section 19 of the North Carolina Constitution if people "'of common intelligence' cannot know 'what conduct on their part will render them liable to its penalties.'" *State v. Rose*, 323 S.E.2d 339, 341 (N.C. 1984) (internal quotation marks omitted) (quoting *G I Surplus Store, Inc. v. Hunter*, 125 S.E.2d 764, 768 (N.C. 1962)); *see also Rose*, 323 S.E.2d at 341 ("A statute is not unconstitutionally vague when its terms can be understood and complied with by an average person exercising ordinary common sense.") (collecting U.S. Supreme Court and North Carolina Supreme Court cases). The North Carolina Supreme Court has specifically articulated the two-prong test for vagueness, holding that "a statute is unconstitutionally vague if it either: (1) fails to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited'; or (2) fails to 'provide explicit standards for those who apply [the law].'" *State v. Green*, 502 S.E.2d 819, 824 (1998) (alteration in original) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)), *abrogated on other grounds by State v. Kelliher*, 873 S.E.2d 366 (N.C. 2022)

violence renders the scope of proscribed conduct significantly more definite," the challengers of the act in that case argued that the federal statute was vague due to its definition of "public disturbance." *Miselis*, 972 F.3d at 544–46. Plaintiff makes a considerably different argument in the instant case, asserting that the Anti-Riot Act does not clarify "whether a defendant must have personally engaged in violent or disorderly conduct." (ECF No. 40 at 27.) As *Miselis* does not deal specifically with the acute issue that Plaintiff raises with respect to the Act's definition of "riot," the Fourth Circuit's conclusion in *Miselis* that the federal anti-riot act was not vague because it included a requirement of violence or threat of violence does not apply here.

The Court next turns to the two factors that courts must consider on a vagueness challenge under the U.S. Constitution: adequate notice of the prohibited conduct and arbitrary and discriminatory enforcement.

        a.      Adequate Notice of the Prohibited Conduct and Arbitrary and Discriminatory Enforcement

"The purpose of the fair notice requirement is to enable citizens to conform their conduct to the proscriptions of the law." *Manning*, 930 F.3d at 274. When a statute includes an undefined term and "the statutes and case law fail to provide any standards of what is meant by the term," such circumstances "compel[] the conclusion that use of the term in the challenged scheme is unconstitutionally vague." *Id.* The requirement does not require "perfect clarity and precise guidance." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). Instead, a statute is vague if an individual must "necessarily guess at its meaning and differ as to its application." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926); *United States v. Morison*, 844 F.2d 1057, 1070 (4th Cir. 1988). While it is "a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined," *Grayned v. City of Rockford*, 408

U.S. 104, 108 (1972), "[t]he fact that [a legislature] might . . . have chosen [c]learer and more precise language" does not make a statute unconstitutionally vague, *United States v. Powell*, 423 U.S. 87, 94 (1975) (alteration in original) (internal quotation marks omitted).

"[T]he more important aspect of the vagueness doctrine is . . . the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (citation and internal quotation marks omitted). "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 108–09. In those instances, a criminal statute may permit "a standardless sweep [that] allows [law enforcement] . . . to pursue their personal predilections." *Kolender*, 461 U.S. at 358 (first alteration in original) (internal quotation marks omitted) (quoting *Smith v. Goguen*, 415 U.S. 566, 575 (1974)).

Plaintiff alleges that the definitional provision of the Act is vague because it "fails to provide fair notice to ordinary people seeking to exercise their right to protest regarding their exposure to potential criminal and civil liability" by participating in a demonstration where violence or property destruction occurs. (ECF No. 25 ¶ 86.) Plaintiff also alleges the definitional provision of the Act "invites arbitrary and discriminatory enforcement by conferring discretion on law enforcement to arrest nonviolent protestors in close proximity to an act of violence or property damage committed by others." (*Id.*) Defendants retort, however, that the Act "provides clear notice to protestors regarding the kind of conduct that might give rise to prosecution" and "includes other features that *Miselis* held further ameliorated the risk of subjective enforcement." (ECF No. 33 at 22.)

33

A federal court "is not confined to the plain language of the contested statute when assessing a void-for-vagueness claim," and "must 'consider any limiting construction that a state court or enforcement agency has proffered.'" *Martin v. Lloyd*, 700 F.3d 132, 136 (4th Cir. 2012) (citing *Kolender*, 461 U.S. at 355) (quoting *Village of Hoffman Estates*, 455 U.S. at 494 n.5); *Wainwright v. Stone*, 414 U.S. 21, 22 (1973) ("The judgment of federal courts as to the vagueness or not of a state statute must be made in the light of prior state constructions of the statute."). The Court reiterates that North Carolina state courts have decided cases, namely *State v. Mitchell* and *State v. Brooks*, that aid in clarifying whether the definitional provision of the Act is vague. Again, with respect to *Mitchell*, the Court construes the definitional provisions with the remaining provisions of the Act, *see Carver*, 314 S.E.2d at 742, including the provisions that provide that "[a]ny person who willfully engages in a riot" or "[a]ny person who willfully incites another to engage in a riot" will be prosecuted, *see* N.C. Gen. Stat. §§ 14-288.2(b)–(e1).

The court in *Mitchell* declared that "in using the phrase, 'willfully engaged in,'" under the Act, "the legislature contemplated *active participation by the defendant in the riotous activity*." 429 S.E.2d at 582 (emphasis added). Implementing the harmonious approach of statutory construction that is demanded by North Carolina courts, the Court has concluded that one "willfully engages in a riot" when that person actively participates in the riotous activity that takes place at an assemblage "which by disorderly and violent conduct, or the imminent threat of disorderly and violent conduct results in injury or damage to persons or property or creates a clear and present danger of injury or damage to persons or property." N.C. Gen. Stat. § 14-288.2. Such a standard would alleviate any concern of ordinary persons that seeking to exercise their right to protest by participating in a demonstration where violence or property destruction occurs would expose those persons to potential criminal and civil liability.

34

This limiting construction of the definition of "riot" under the Act also prevents arbitrary and discriminatory enforcement. Its clarification with respect to whether an individual must personally engage in the violent or disorderly conduct or threat of such conduct prevents a "standardless sweep" that would allow law enforcement and prosecutors to "pursue their personal predilections" under the Act, *Kolender*, 461 U.S. at 358 (quoting *Smith*, 415 U.S. at 575), as it eliminates any discretion "to arrest nonviolent protestors in close proximity to an act of violence or property damage committed by others," as is Plaintiff's concern, (ECF No. 25 ¶ 86).

Finally, the Court again highlights that North Carolina Supreme Court has unambiguously held that there is "*nothing* constitutionally impermissible in [its] statutory definition of the offense of riot." *Brooks*, 215 S.E.2d at 118 (emphasis added). As the Court defers to North Carolina state courts' prior constructions of the Act, the Court concludes that Plaintiff has failed to sufficiently plead that the definitional provision of the Anti-Riot Act is void-for-vagueness under the United States Constitution.

### b. Vagueness under the North Carolina Constitution

Under North Carolina law, "the Law of the Land Clause[14] of the North Carolina Constitution, N.C. Const. art. I § 19, 'is synonymous with due process of law as found in the Fourteenth Amendment to the Federal Constitution.'" *State v. Bryant*, 614 S.E.2d 479, 485 (N.C. 2005) (quoting *Rhyne v. K–Mart Corp.*, 594 S.E.2d 1, 15 (N.C. 2004)). Moreover, like the characteristic of the overbreadth doctrine under North Carolina law, the North Carolina

---

[14] In pertinent part, article I, section 19 of the North Carolina Constitution provides: "No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the *law of the land*." N.C. Const. art. I, § 19 (emphasis added).

Supreme Court does not draw a clear distinction between the standard for vagueness under the U.S. Constitution and the standard for vagueness under the North Carolina Constitution. Further, in cases involving claims asserting a vagueness challenge to a statute under both the U.S. Constitution and the North Carolina Constitution, when the North Carolina Supreme Court has concluded that a statute is not vague, the court has applied that conclusion to vagueness claims under both constitutions—the U.S. Constitution and the North Carolina Constitution. *See State v. Green*, 502 S.E.2d 819, 826 (N.C. 1998), *abrogated on other grounds by State v. Kelliher*, 873 S.E.2d 366 (N.C. 2022); *State v. Fredell*, 195 S.E.2d 300, 304 (N.C. 1973); *In re Wilkins*, 242 S.E.2d at 840–41, *abrogated on other grounds by In re Guess*, 376 S.E.2d 8. Also, the Court reiterates that Plaintiff offers no argument regarding whether there is a different standard that applies to its overbreadth and vagueness challenges under the state constitution. (*See generally* ECF No. 40.) As a result, because the Court has concluded that the Anti-Riot Act is not vague under the U.S. Constitution, the Court likewise concludes that the Act is not vague under the North Carolina Constitution.

Thus, Plaintiff's Amended Complaint does not sufficiently allege that the definitional provision of the Anti-Riot Act is void for vagueness under the United States Constitution or the North Carolina Constitution. Therefore, the Court concludes that Plaintiff has not stated a claim for vagueness under either the federal or state constitution, and therefore dismisses each claim Plaintiff brings challenging the Anti-Riot Act on grounds of vagueness.[15]

## III. CONCLUSION

In summation, the Court declines to dismiss Plaintiff's state law claims based on sovereign immunity as argued by Defendants, but grants Defendants' Motions to Dismiss

---

[15] The claims Plaintiff brings on vagueness grounds are Count One and Count Three of Plaintiff's Amended Complaint. (*See* ECF No. 25 at 29–31, 33–35.)

concluding that Plaintiff has failed to state a claim under each of its claims that the Anti-Riot Act is overly broad or void for vagueness in violation of the United States Constitution or the North Carolina Constitution. Accordingly, Defendants' Motions to Dismiss each of Plaintiff's claims will be granted. As a result, Plaintiff's Amended Motion to Certify Class will be denied as moot, and Plaintiff's Amended Motion for Preliminary Injunction will likewise be denied as moot.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motions to Dismiss, (ECF Nos. 32; 34), are **GRANTED**, and each of Plaintiff's claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's Amended Motion to Certify Class, (ECF No. 27), and Plaintiff's Amended Motion for Preliminary Injunction, (ECF No. 30), are each **DENIED** as **MOOT**.

This, the 25th day of June 2024.

/s/ Loretta C. Biggs
United States District Judge